UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DEATH WISH COFFEE, LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>DEATH BEFORE DECAF PTY. LTD.,<br><br>　　　　　Defendant. | Case No.: 1:23-cv-7605<br><br>**COMPLAINT FOR TRADEMARK INFRINGEMENT, UNFAIR COMPETITION, AND DECLARATORY JUDGMENT**<br><br>**JURY TRIAL DEMANDED** |

　　　　1.　　　Plaintiff Death Wish Coffee, LLC ("Death Wish Coffee" or "Plaintiff"), brings this Complaint against Defendant Death Before Decaf Pty. Ltd. ("DBD" or "Defendant"), and alleges, on personal knowledge as to its own actions and on information and belief as to the actions of others, as follows:

### INTRODUCTION

　　　　2.　　　Plaintiff Death Wish Coffee is a New York-based coffee roaster and one of the largest and most successful premium coffee brands in the country.  Beginning in 2012, it has sold critically-acclaimed coffee under its unique DEATH WISH COFFEE CO.® federal trademark and associated design and logo marks at thousands of major retail locations nationwide and online.[1]

　　　　3.　　　Death Wish Coffee brings this action to enjoin Defendant, a marginal Australian coffee maker, from confusing consumers and trading on Death Wish Coffee's brand and goodwill by launching a competing "DEATH BEFORE DECAF" brand in the United States. Defendant's product and iconography borrow and essentially mimic Death Wish Coffee's strong ethos, including by employing a copycat "skull and bones" logo and packaging design:

---

[1] Death Wish Coffee is the owner of multiple federally-registered and common-law trademarks for its well-known brand, including its DEATH WISH COFFEE CO.® word mark, (Reg. No. 4605090), DEATH WISH COFFEE CO. & Design® (Reg. No. 5275128), and related marks (the "**DEATH WISH COFFEE CO.® Marks**").

| DEATH WISH COFFEE CO.® Products | Defendant's Infringing Products |
|---|---|
|  | |

4. Defendant recently has begun attempting to sell its infringing copycat coffee, apparel and other merchandise in the United States and New York ("**Infringing Products**"), including through its online website https://deathbeforedecaf.com.au/, offering shipment to addresses located in the United States and this District.

5. Defendant also has signaled its intent to expand sales and marketing of the Infringing Products in the United States by filing an application with the United States Patent and Trademark Office to extend its Australian trademark registration for "DEATH BEFORE DECAF" into the United States. In submitting its application, Defendant represented that it has a "bona fide intention to use the mark in commerce" in the United States.

6. Death Wish Coffee has attempted to ascertain the full extent of Defendant's U.S. sales and to resolve Defendant's infringement without burdening the Court to no avail. Death Wish Coffee therefore brings this suit to halt Defendant's willful infringement, seek preliminary and permanent injunctive relief, recover the damages it has suffered, and disgorge the illegal profits that Defendant has made by its misuse of the DEATH WISH COFFEE CO.® Marks and trade dress.

## JURISDICTION AND VENUE

7. This action arises and is brought under the Trademark Act, known as the Lanham Act, 15 U.S.C. §§ 1050, *et seq.*, and New York common law.

8. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (c).

10. This Court has jurisdiction over Defendant because Defendant has targeted its activities at this district, including by offering its Infringing Products for sale in commerce in the United States and in this district. Additionally, Defendant has sought to avail itself of the benefits of selling its products in the United States via filing a trademark application for "DEATH BEFORE DECAF" for "Coffee" in International Class 30 and "cafes" in International Class 43 (Serial No. 79320425) on the basis of its intent to use the infringing mark in commerce. Defendant either expected or reasonably should have expected that its activities would have consequences in this district.

11. In the alternative, this Court has personal jurisdiction over Defendant pursuant to Fed. R. Civ. P. 4(k)(2) to the extent that Defendant is not subject to jurisdiction in any particular State's courts of general jurisdiction.

## THE PARTIES

12. Plaintiff Death Wish Coffee, LLC is a premium coffee roaster with its headquarters in Saratoga Springs, New York. Death Wish Coffee is a limited liability company organized under the laws of the State of New York. Death Wish Coffee markets and sells critically acclaimed coffee and related products under the DEATH WISH COFFEE CO.® Marks and related marks and name.

13. Upon information and belief, Defendant is an Australian limited liability company with its principal place of business in Brisbane, Australia. Defendant markets and sells or intends to sell coffee products, including in the United States and this district.

## BACKGROUND

A. **The DEATH WISH COFFEE CO.® Marks and Brand**

14. Death Wish Coffee is a manufacturer and seller of fair-trade coffees under the DEATH WISH COFFEE CO.® Marks. Founded in 2012 in Saratoga Springs, New York, Death

3

Wish Coffee has become one of the top-selling premium coffee brands in the United States. Its coffees are renowned for their flavor, quality, and healthy kick of caffeine.

15. Death Wish Coffee's products are sold under its signature DEATH WISH COFFEE CO.® Marks and distinctive packaging and trade dress, as shown below:

   

16. Death Wish Coffee has been an innovator and disruptor in the coffee business with its unique, rebellious attitude and marketing style. Through its distinctive branding and taglines such as "Rebels with Causes," "Rebellious by Nature" and "The World's Strongest Coffee," Death Wish Coffee has fostered a unique brand image for its coffee products and inspired a loyal and enthusiastic customer following.

17. Death Wish Coffee has received widespread praise and national attention, from having been featured on Good Morning America to, in 2016, being the smallest company ever to run a TV ad at the Super Bowl. Death Wish Coffee also enjoys significant social media engagement, with hundreds of thousands of followers on Instagram and TikTok, and has received multiple products awards in "best of lists" across numerous websites and blogs.

18. Today, Death Wish Coffee's products are sold through Death Wish Coffee's own website (www.deathwishcoffee.com), via online retailers such as Amazon, and in major U.S. retail chains, including Walmart, Kroger, Target, and Albertsons/Safeway.

19. Over the last five years, Death Wish Coffee has made substantial investments to market, advertise, and grow its brand and consumer goodwill under its DEATH WISH COFFEE CO.® Marks.

20. Since its founding, Death Wish Coffee has diligently protected its trademarks. Death Wish Coffee owns several U.S. and international registrations and applications, including, among others, DEATH WISH COFFEE CO.® for coffee and coffee beans (Reg No. 4605090) (the "**'090 Registration**") and for clothing and apparel (App. No. 97873859) (the "**'859 Application**"), DEATH WISH COFFEE CO. & Design® for coffee and coffee beans (Reg No. 5275128) (the "**'128 Registration**") and for clothing and apparel (App. No. 97873864) (the "**'864 Application**"). The logo design for the DEATH WISH COFFEE CO. & Design® marks (hereafter, the "**Death Wish Logo**") is pictured below:



21. Death Wish Coffee began use of the marks in the '090 and '128 Registrations (collectively, the "**Death Wish Registered Marks**") in US commerce by no later than January 1, 2011, and has used them consistently ever since.

22. Death Wish Coffee began use of the marks in the '859 Application and the '864 Application (collectively, the "**Death Wish Applied-For Marks**") by no later than September 22, 2013, and has used them consistently ever since.

23. The Death Wish Registered Marks have been registered for more than five years. The USPTO granted registration for the '090 Registration on September 16, 2014. The USPTO granted registration for the '128 Registration on August 29, 2017.

24. The '090 Registration is incontestable as a matter of law. Death Wish Coffee filed a Combined Declaration of Use and Incontestability with the US Trademark Office with respect to the '090 Registration on June 8, 2020, and the US Trademark Office accepted the filing as of August 25, 2020.

25. Death Wish Coffee filed the trademark applications for the Death Wish Applied-For Marks on April 5, 2023.

26. Death Wish Coffee has also designed a distinctive and instantly recognizable form of packaging for its coffee products, featuring a black background for its coffee bags, and adorned with the Death Wish Coffee Logo in the center of the packaging, with product information, including flavor and name, under the logo (the "**Death Wish Trade Dress**").

27. Death Wish Coffee regularly enforces its trademarks against would-be infringers and has prevented infringing marks from being used in the marketplace.

28. As a result of Death Wish Coffee's extensive promotion of its intellectual property and the widespread success of its products, DEATH WISH COFFEE CO.® is among the most unique and valuable brands in the coffee industry.

  **B.**  **Defendant's Directly Competing Coffee Business & Infringement**

29. Defendant is an Australian coffee company that is seeking to gain a foothold in the United States market by free-riding on the fame and goodwill of the DEATH WISH COFFEE CO.® Marks.

30. Defendant offers for sale coffee, apparel and other products bearing Defendant's "DEATH BEFORE DECAF" Mark (the "**Infringing Mark**") via its internet website at https://deathbeforedecaf.com.au/, which offers the Infringing Products for shipment to addresses located in the United States and this district.

31. Defendant's Infringing Products are confusingly similar to Death Wish Coffee's products and DEATH WISH COFFEE CO.® Marks, as demonstrated by the examples below:



32. Defendant also uses on its website, coffee packaging, and various apparel and merchandise that it sells, a logo that uses a "skull and crossbone" pattern that replaces the crossbones with coffee scoops (the "**Infringing Logo**"). A side-by-side comparison of the Death Wish Coffee Logo and Defendant's Infringing Logo is below:



33. Defendant uses the Infringing Mark and the Infringing Logo in combination in connection with its packaging for its coffee products to copy and/or strongly suggest the distinctive trade dress used by Death Wish Coffee for its coffee (the "**Infringing Trade Dress**").

34. In addition to these similarities between word marks, logos and packaging, Defendant's product branding and social media advertising show that Defendant uses its marks in connection with symbols, phrases and images that evoke the same edgy, rebellious brand image as the DEATH WISH COFFEE CO.® Marks and branding. Examples include, without limitation, Defendant's use of a skull and crossbones logo, the phrase "Hot Coffee X Hard

Music," and use of phrases "Near Death" and "Dying for It" to offer for sale gift boxes including Defendant's coffee and other products.

35. Upon information and belief, these striking similarities with Death Wish Coffee's distinctive marks and branding are not a coincidence. Instead, it appears that Defendant has set out to mimic Death Wish Coffee's distinctive branding and free-ride on the substantial goodwill that Death Wish Coffee has earned.

36. Defendant is already offering its Infringing Products for shipment to customers in the United States and this district through its website and online store.

37. Upon information and belief, Defendant also intends to expand its use of the "DEATH BEFORE DECAF" mark in the United States. As further evidence of this, Defendant has filed a trademark application seeking to register "DEATH BEFORE DECAF" for coffee in International Class 30, and cafes in International Class 43. (Application No. 79320425). Defendant's application relies on Section 66a of the Lanham Act, 15 U.S.C. § 1141f, which permits the holder of a foreign trademark registration to request extension of the registration into the United States. Upon information and belief, in support of its application, Defendant declared that it has a bona fide intention to use the "DEATH BEFORE DECAF" mark in commerce in the United States.

38. Death Wish Coffee has opposed the application in the United States Trademark Office, Opposition No. 91285093. Defendant has retained counsel located in New York City to respond to the Opposition.

39. On or about February 23, 2023, Death Wish Coffee notified Defendant via email that Death Wish Coffee was concerned about likelihood of confusion, and sought to explore alternatives to litigation. Defendant did not cease its infringement or withdraw its trademark application, leading to the filing by Death Wish Coffee of an opposition against Defendant's trademark application before the United States Trademark Trial and Appeal Board and the filing of this civil action.

C.     **Defendant's Infringing Goods Are Likely to Mislead Consumers**

40.    Defendant's deliberate infringement is likely to succeed in causing consumer confusion and free-riding on Death Wish Coffee's reputation and goodwill.  In *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2nd Cir. 1961), the United States Court of Appeals for the Second Circuit set forth a multi-factor test for considering the likelihood of confusion for trademark claims that require courts to consider:  (a) the strength of the plaintiff's mark; (b) the degree of similarity between the two marks; (c) the proximity of the products; (d) the likelihood that the owner will bridge the gap; (e) evidence of actual confusion; (f) defendant's good faith in adopting the mark; (g) the quality of defendant's product; and (h) the sophistication of the consumers.  Applying the relevant factors to Defendant's use of its Infringing Mark and Infringing Logo on the Infringing Products convincingly demonstrates a likelihood of confusion and therefore infringement of the DEATH WISH COFFEE CO.® Marks.

41.    *The Strength of the DEATH WISH COFFEE CO.® Marks*.  The DEATH WISH COFFEE CO.® Marks are conceptually strong as fanciful marks that have achieved exceptional commercial strength over eleven years of popularity and success in the marketplace.  Likewise, the Death Wish Trade Dress is unique in the industry and serves as an indicator of source for Death Wish Coffee's products.

42.    *Similarities between the DEATH WISH COFFEE CO.® Marks and Trade Dress and Defendant's Infringing Mark and Trade Dress*.  Defendant's Infringing Mark and Logo are similar in sight, sound and meaning to the DEATH WISH COFFEE CO.® Marks.  DEATH BY DECAF shares the same first word as the DEATH WISH COFFEE CO.® Marks.  *See, e.g., Palm Bay Imports, Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772*, 396 F.3d 1369, 1372 (Fed. Cir. 2005) (noting that, for mark VEUVE CLIQUOT, VEUVE was the prominent feature as the first word in the mark and the first word to appear on the product label.); *Presto Prods., Inc., v. Nice-Pak Prods., Inc*., 9 U.S.P.Q.2d 1895, 1897 (TTAB 1988) ("it is often the first part of a mark which is most likely to be impressed upon the mind of a purchaser and remembered" when making purchasing decisions).  Additionally, as shown above, Defendant's

Infringing Logo shares with the Death Wish Logo a highly similar "skull and crossbones" design.  These similarities are magnified by Defendant's marketing and social media, which, separately and in combination, seek to mimic the same edgy, rebellious brand image as the DEATH WISH COFFEE CO.® Marks and branding.

43. *Similarity Between the Goods Offered Under the Two Marks*.  The goods sold by Defendant under its Infringing Mark, Infringing Logo and/or Infringing Trade Dress are identical to those sold by Death Wish Coffee under its marks:  whole bean coffee and apparel.

44. *Likelihood of Bridging the Gap.*  Here, both Death Wish Coffee and Defendant sell their products online and are targeting the same customer base:  purchasers of coffee who are looking for highly caffeinated coffee beans.  There is no gap to bridge.

45. *Evidence of Actual Confusion*.  Upon information and belief, Defendant knew of Death Wish Coffee, its products, its brand identity and its packaging and marketing by virtue of Death Wish Coffee's fame and reputation as a leading coffee brand.  Upon information and belief, Defendant intended to cause consumer confusion by using a copycat version of both the marks and the trade dress.

46. *Malicious Intent of Defendant*.  Defendant selected its Infringing Mark, Infringing Logo and Infringing Trade Dress well after Death Wish Coffee's products were available for sale, and, upon information and belief, well after Death Wish Coffee applied for and registered the DEATH WISH COFFEE CO.® Marks.  Accordingly, it cannot be coincidence that Defendant's Infringing Mark, Infringing Logo and Infringing Trade Dress bear such striking similarities to the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress.

47. *Quality of Defendant's Goods*.  There is no indication that Defendant's products are of comparable quality to Death Wish Coffee's products, which have earned a widespread following and goodwill as a result of Death Wish Coffee's dedication to producing exceptional coffee.  Defendant's infringement of Death Wish Coffee's trademarks places this valuable goodwill and reputation in the hands of an infringer, compounding the harm to Death Wish Coffee.

48. *Consumer Sophistication.* Consumer products such as coffee are inexpensive, as a result of which reasonably prudent consumers of such products do not apply great scrutiny to their purchases. *See, e.g., Kraft Foods Group Brands LLC v. Cracker Barrel Old Country Store, Inc.*, 735 F.3d 735, 739 (7th Cir. 2013) (affirming injunction for trademark infringement, noting that "[g]enerally only very cost-conscious consumers are apt to scrutinize carefully the labels of the less expensive items sold in a grocery store.").

49. The foregoing facts and factors demonstrate that Defendant's infringement of the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress creates a high likelihood of confusion.

**D. Death Wish Coffee Faces Irreparable Harm from Defendant's Infringement**

50. The harm being (or shortly to be) inflicted on Death Wish Coffee by Defendant's infringing sales is severe and irreparable. In the highly competitive coffee market, the effects of even initial confusion amongst consumers are likely to be momentous, particularly when the packaging and logos between the parties' products are almost identical.

51. Defendant's use of the Infringing Mark, Infringing Logo and Infringing Trade Dress is highly likely to confuse consumers into believing that Defendant's Infringing Products are somehow manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the DEATH WISH COFFEE CO.® Marks. Such confusion irreparably reduces the distinctive nature of the valuable Death Wish Coffee brand and its function as a source identifier for Death Wish Coffee's products.

52. Consumers who are deceived into purchasing Defendant's Infringing Products will associate those products with the DEATH WISH COFFEE CO.® Marks, Death Wish Trade Dress and brand, damaging Death Wish Coffee's hard-won goodwill and reputation for quality. Moreover, consumers who are exposed to the Infringing Products before trying Death Wish Coffee's products will likely be deceived into thinking that Death Wish Coffee, rather than Defendant, is the infringing party. Death Wish Coffee also faces incalculable harm in the form

of lost and diverted sales that would accrue to Death Wish Coffee but for Defendant's infringement.

53. Death Wish Coffee's loss of control over its brand and diverted sales as a result of Defendant's infringement are irreparable and cannot be remedied by monetary damages alone.

54. Accordingly, Death Wish Coffee will suffer irreparable harm to its brand and business – in addition to substantial monetary damages – if Defendant's infringement is not enjoined.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION
(Federal Trademark Infringement – 15 U.S.C. § 1114)

55. Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

56. Plaintiff owns all right, title, and interest in the Death Wish Registered Marks, which it has continuously used in commerce since at least 2011.

57. Through the conduct alleged above, Defendant's current and/or future use in commerce of the Infringing Products infringes Plaintiff's rights in the Death Wish Registered Marks and violates 15 U.S.C. § 1114 because it renders Defendant's products confusingly similar to the well-known Death Wish Registered Marks and products. Defendant's unauthorized use of the Infringing Products creates the erroneous impression in consumers' minds that the Infringing Products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the Death Wish Registered Marks.

58. Defendant's imitation of Death Wish Coffee and its marks is causing irreparable injury to Plaintiff by, *inter alia*, destroying consumers' unique association of the Death Wish Registered Marks with Plaintiff's products.

59. Plaintiff has no adequate remedy at law for Defendant's misconduct. Unless Defendant is enjoined and restrained from continuing its infringement, consumers will continue to be confused and Plaintiff's injuries will continue to occur.

60. Plaintiff also is entitled to recover from Defendant any gains, profits, and advantages as a result of Defendant's infringement, in an amount to be proven at trial.

61. Defendant's intentional and willful misconduct renders this an "exceptional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

**SECOND CAUSE OF ACTION**
(False Designation of Origin – 15 U.S.C. § 1125(a))

62. Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

63. Plaintiff owns all rights, title, and interest in the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress.

64. Through the conduct alleged above, Defendant's current and/or future use in commerce of the Infringing Products infringes Plaintiff's rights in the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress and violates 15 U.S.C. § 1125(a) because it renders Defendant's products confusingly similar to the well-known DEATH WISH COFFEE CO.® Marks, Death Wish Trade Dress, and products. Defendant's unauthorized use of a nearly identical mark and trade dress creates the erroneous impression in consumers' minds that Defendant's Infringing Products have been manufactured, approved, sponsored, endorsed, or guaranteed by, or are in some way affiliated with Plaintiff and the DEATH WISH COFFEE CO.® Marks. Such use constitutes a false designation of origin within the meaning of 15 U.S.C. § 1125(a).

65. Defendant's imitation of Death Wish Coffee, the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress is causing irreparable injury to Plaintiff by, *inter alia*, destroying consumers' unique association of the DEATH WISH COFFEE CO.® Marks and Death Wish Trade Dress with Plaintiff's products.

66. Plaintiff has no adequate remedy at law for Defendant's misconduct. Unless Defendant is enjoined and restrained from continuing its acts of unfair competition and

infringement, consumers will continue to be confused and Plaintiff's injuries will continue to occur.

67. Plaintiff also is entitled to recover from Defendant any gains, profits, and advantages as a result of Defendant's unfair competition and infringement, in an amount to be proven at trial.

68. Defendant's intentional and willful misconduct renders this an "exceptional case," entitling Plaintiff to treble damages and attorney's fees pursuant to 15 U.S.C. § 1117.

### THIRD CAUSE OF ACTION
(New York Common Law Unfair Competition)

69. Plaintiff incorporates by reference the facts and allegations set forth in each of the preceding paragraphs as though fully set forth herein.

70. Plaintiff owns all right, title and interest in the Death Wish Registered Marks, which it has continuously used in commerce since at least 2011.

71. Plaintiff owns all right, title and interest in the Death Wish Applied-For Marks, which it has continuously used in commerce since at least 2011.

72. Plaintiff owns all right, title and interest in the Death Wish Trade Dress.

73. The DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress are distinctive and have acquired secondary meaning in the State of New York and throughout the United States.

74. Thus, Plaintiff has enforceable rights in and to the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress under New York law.

75. Through its conduct, Defendant has misappropriated the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress and the goodwill associated therewith in an attempt to palm off Defendant's Infringing Products as being sponsored, endorsed or otherwise associated with Death Wish Coffee and its brand.

76. Defendant's Infringing Mark, Infringing Logo and Infringing Trade Dress is confusingly similar to the DEATH WISH COFFEE CO.® Marks and Death Wish Trade Dress.

Defendant's use of the Infringing Marks and Infringing Trade Dress creates the erroneous impression in consumers' minds that Defendant's Infringing Products are associated with, approved, sponsored, endorsed, or otherwise affiliate with Plaintiff and its Death Wish products and brand. Such use constitutes unfair competition under New York common law. *See, e.g., ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007).

77. Defendant knew of the Death Wish brand and its popularity in advance of its decision to use the Infringing Mark, the Infringing Logo and the Infringing Trade Dress, and chose each of those in order to capitalize on the goodwill and reputation of Plaintiff, its trademarks, brand, and the goodwill associated therewith.

78. Defendant's unfair competition is causing irreparable injury to Plaintiff by, *inter alia*, destroying consumers' unique association of the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress with Plaintiff's products.

79. Plaintiff has no adequate remedy at law for Defendant's misconduct. Unless Defendant is enjoined and restrained from continuing its infringement, consumers will continue to be confused and Plaintiff's injuries will continue to occur.

80. Defendant has profited from its unfair competition, and Plaintiff has suffered damages in an amount to be proven at trial.

81. Plaintiff also is entitled to recover from Defendant any gains, profits, and advantages as a result of Defendant's infringement, in an amount to be proven at trial.

**FOURTH CAUSE OF ACTION**
(Declaratory Judgment – 15 U.S.C. § 1119 & 28 U.S.C. §§ 2201-2202)

82. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as if set forth fully herein.

83. Defendant's use and attempted registration of the infringing "DEATH BEFORE DECAF" mark to sell the Infringing Products infringes Plaintiff's rights in the DEATH WISH COFFEE CO.® Marks and is likely to cause confusion.

84. Despite receiving notice that it is infringing Plaintiff's rights, Defendant has refused to withdraw its application to register the "DEATH BEFORE DECAF" mark with the USPTO under Application Serial No. 79320425.

85. As such, there is a substantial, immediate and justiciable controversy between the parties in that Defendant seeks to register the infringing "DEATH BEFORE DECAF" mark in connection with the Infringing Products, while Plaintiff contends that such use and registration infringes Plaintiff's rights in the DEATH WISH COFFEE CO.® Marks.

86. Plaintiff will be damaged by Defendant's infringing use and attempted registration of the subject mark.

87. Plaintiff accordingly seeks a declaratory judgment and decree pursuant to 15 U.S.C. § 1119 and 15 U.S.C. § 1052(d) that Defendant has no right to register or use "DEATH BEFORE DECAF" in connection with the Infringing Products or any similar product, as well as an order that Defendant's Application Serial No. 79320425 be rejected.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully demands judgment against Defendant as follows:

A. Preliminarily and permanently enjoin Defendant from using any version of the Infringing Products in connection with the sale, offering for sale, advertising or marketing of any coffee or coffee-related products in the United States using a name, logo or packaging that infringes Plaintiff's rights in the DEATH WISH COFFEE CO.® Marks, the Death Wish Applied-For Marks, and the Death Wish Trade Dress.

B. Award Plaintiff three (3) times its actual damages in accordance with 15 U.S.C. § 1117.

C. Award Plaintiff three (3) times Defendant's profits from its infringement in accordance with 15 U.S.C. § 1117.

D. Award Plaintiff its reasonable attorney's fees as well as the costs of this action in accordance with 15 U.S.C. § 1117 and under applicable New York law.

E. Award punitive damages.

F. Declare that Defendant's continued unauthorized use of the Infringing Mark, the Infringing Logo or the Infringing Trade Dress, or any colorable imitation thereof in connection with the sale, marketing or distribution of coffee would infringe Plaintiff's rights in the DEATH WISH COFFEE CO.® Marks and the Death Wish Trade Dress.

G. Declare that Defendant has no right to register "DEATH BEFORE DECAF" in connection with the Infringing Products or any similar product and order that Defendant's Application Serial No. 79320425 be rejected.

H. Award Plaintiff such other and further relief as this Court deems equitable and proper.

Dated: August 28, 2023                    Respectfully Submitted,

                                          /s/ J. Noah Hagey
                                          J. Noah Hagey
                                          Douglas S. Curran
                                          Mitchell Stein
                                          BRAUNHAGEY & BORDEN LLP
                                          118 West 22nd Street, 12th Floor
                                          New York, NY 10011
                                          Tel.: (646) 829-9403
                                          Fax: (646) 403-4089
                                          hagey@braunhagey.com
                                          curran@braunhagey.com
                                          stein@braunhagey.com

                                          *Trial Counsel for Plaintiff Death Wish Coffee LLC*

## DEMAND FOR JURY TRIAL

Plaintiff demands the trial by jury of all claims and causes of action so triable.

Dated: August 28, 2023                           Respectfully Submitted,

                                          /s/ J. Noah Hagey
                                          J. Noah Hagey
                                          Douglas S. Curran
                                          Mitchell Stein
                                          BRAUNHAGEY & BORDEN LLP
                                          118 West 22nd Street, 12th Floor
                                          New York, NY 10011
                                          Tel.: (646) 829-9403
                                          Fax: (646) 403-4089
                                          hagey@braunhagey.com
                                          curran@braunhagey.com
                                          stein@braunhagey.com

                                          *Trial Counsel for Plaintiff Death Wish Coffee LLC*